THE BEATRICE HAVENER.

CROWELL *et al. v.* THE BEATRICE HAVENER.

*(District Court, E. D. New York. March 24, 1892.)*

COLLISION—VESSEL CARRYING OWNER'S GOODS — LOSS OF VOYAGE — DAMAGES — HOW
ASCERTAINED—FREIGHT.

A vessel carrying her owner's goods only is not earning any freight as a sep-
arate interest; hence when she is lost at sea by collision her owner cannot recover,
as for loss of freight, the estimated amount that such a vessel could have been
chartered for to carry a similar cargo on a similar voyage. The proper rule of
damages, *restitutio in integrum,* is satisfied by taking the market value of the ves-
sel at her sailing port at the time she was devoted to the voyage, with interest
thereon, together with her stores, wages, and any other items of expense reason-
ably incurred for the voyage up to the time of loss, with interest.

In Admiralty. On exceptions to commissioner's report.
*Carter & Ledyard,* for libelants.
*Owen, Gray & Sturgis,* for claimant.

BROWN, District Judge. Upon the reference to the commissioner to
take proof of the libelants' damage from the collision in the above cause,
it appeared that at the time of collision the libelants' vessel, the Ethel
A. Merritt, was bound upon a voyage from Philadelphia to St. Andrews,
carrying the libelants' own goods exclusively. Besides the value of
the vessel and cargo, the libelants have been allowed, as for loss of
freight, the amount for which it was estimated that such a vessel could
have been chartered to carry a similar cargo, less the estimated ex-
penses of completing the voyage from the time of collision. If the vessel
had been under charter, the loss of freight would have been computed
and allowed for in that way. Exception has been taken, however, to
that mode of estimating the damage in the present case, because there
was no charter in fact, and hence no basis for applying that mode of
ascertaining the libelants' damage.

The exception, I think, must be sustained. When freight has been
allowed as an item of damage, it is because the owner had a distinct
interest separate from the vessel, known as "freight," arising out of some
contract or employment under which freight as such was being earned;
and the allowance was for the loss of that distinct interest. Such a
distinct interest may accrue either under a charter that covers the whole
ship, or under bills of lading, which are in effect charters of portions
of the ship's carrying capacity. Such contracts create a definite, valu-
able interest; and when they are destroyed by the defendant's fault, the
libelant is entitled to indemnity for that specific loss.

But it is inadmissible, as it seems to me, to resort to the fiction of
an imagined charter, when the libelants are transporting their own
cargo. Under the liberal construction of policies of insurance, where the
parties insure "freight" and pay a premium on "freight," a "reason-
able freight" has sometimes been deemed covered in favor of owners

carrying their own cargo; because otherwise the intent of the insurance would be lost, and the common object be defeated. *Flint* v. *Flemyng*, 1 Barn. & Adol. 45. But in cases of tort, there is no contractual relation; no question of the construction and intent of a contract arises, but only the question of indemnity to the injured party. While the general rule is that the indemnity shall be as complete as the nature of the case admits of, yet it is well settled that mere anticipated profits are excluded. *The Scotland*, 105 U. S. 24–35; *The City of Alexandria*, 40 Fed. Rep. 697; *The City of New York*, 23 Fed. Rep. 619. In collision causes the price of goods at the place of destination is on that ground excluded as incompetent, and only the price at the port of departure is allowed, with interest and any incidental expenses.

In the absence of any charter or bill of lading, and of any contract which might furnish a basis for any independent employment of the ship, or earning of "freight" as such, I do not feel at liberty to adopt any different rule, or to depart from the well-established law in the case of goods. The compensation for which the ship-owners look in the employment of their vessel to carry their own goods is solely in the expectation of the enhanced value of the goods at the place of discharge; and if that expectation of enhanced value cannot be considered in determining the owner's loss on the goods, I do not see how it can be any the more considered as regards the loss of the ship, either directly or indirectly. Nor is that necessary, nor is the supposition of a fictitious charter necessary, in order to satisfy the rule of *restitutio in integrum*. That rule will be fully satisfied by allowing to the libelants, as in the case of goods wholly lost at sea, the market value of their vessel at the port of sailing at the time she was devoted to the voyage, with interest from that date; and in addition thereto, whatever stores or special equipment of any kind may have been provided for the voyage, including the wages of officers and men from the time they were engaged, as well as any other items of expense, if any, reasonably incurred for the prosecution of the voyage up to the time of loss, with interest on such sums from the time they were supplied or paid. This rule will fully indemnify the libelants for their actual loss of the voyage, while excluding, as is necessary, all merely anticipated profits.

Upon the widely divergent testimony concerning the value of the steamer, I am not satisfied that I could arrive at any better judgment than that of the commissioner; and I shall not, therefore, disturb his finding in that respect.

If the parties do not agree upon a modified sum in lieu of that allowed for freight, the matter will be referred back to the commissioner for readjustment in accordance herewith.